# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **LESLIE MADDALONE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:18-CV-1610-SNLJ** |
| | ) | |
| **ANDREW M. SAUL[1],** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

The Commissioner of the Social Security Administration denied plaintiff Leslie Maddalone's application for Disability Insurance Benefits under Titles II and XVI of the Social Security Act. Plaintiff now seeks judicial review (#9). The Commissioner opposes the motion (#16), and the issue is ripe. As discussed below, the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

## I.      Procedural History

Plaintiff Maddalone was born in 1983, attended school through high school, and worked as a fast food cashier, restaurant server, and bartender. She worked as a bartender from November 2011 through December 2014, when, on December 29, 2014, she reported to the emergency department with severe headache, nausea, vomiting, chills, and neck, eye, and ear pain. She was diagnosed with a cerebral aneurysm and underwent

---

[1] After this case was filed, Saul was confirmed as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

a cerebral angiogram with stent assisted coil embolization on December 30. She underwent numerous evaluations after surgery, and she was deemed to have no defects in swallowing, speech, ambulating, caring for herself, and strength. On January 12, 2015, she was discharged from the hospital and told to "take it slow" when returning to work and "to not overdo it" and not to take double-shifts. On January 20, plaintiff reported to her neurosurgeon, Dr. Callison, that she was extremely fatigued and very easily agitated, but she denied other neurological symptoms. On February 5, she called Dr. Callison to request a letter to be released back to work, and the doctor's staff faxed a letter. Plaintiff, however, did not return to work.

Plaintiff saw her primary care physician, Dr. Richard Jotte, on June 1, 2015, and she told him that the Celexa (antidepressant) she'd been prescribed was not working. Dr. Jotte prescribed Zoloft instead. When she saw him again on January 16, 2016, she stated her adverse symptoms returned after she ran out of Zoloft, but otherwise she was doing well. She required no additional significant medical treatment until she became pregnant in late 2016.

Plaintiff did not see Dr. Callison again until November 15, 2016. She reported she was pregnant and suffered from continued short-term memory difficulty and headache. She was awake, alert, cooperative, and oriented to person, place, and time. Her speech was fluent and she did not demonstrate aphasia. Dr. Collison noted that her concentration and memory were impaired. A scan showed recanalization of the aneurysm, so she underwent a second surgery with coiling on November 16. After the recoiling, Dr. Callison detailed no addition adverse symptoms related to the aneurysm, and he did not

2

recommend any treatment for her memory problems. Plaintiff was discharged from the hospital on November 18. Although she continued to report headaches, they were attributed to her pregnancy. A followup MRI scan showed normal results.

Plaintiff's high-risk pregnancy obstetrician examined plaintiff from January 12 to May 11, 2017. Plaintiff requested a tubal ligation during her upcoming Caesarean section. She reported headaches, but she said they were improving and responded to Tylenol.

When she applied for disability on September 29, 2015, plaintiff reported she lived in a house with her children. She took care of her children, prepared meals, cleaned the house, and did laundry. She could tend to her personal care, such as dressing bathing, caring for her hair, feeding herself, and using the toilet. She needed reminders to take her medicine, but she was able to drive her car to visit the grocery store, friends, or her parents.

Alison Burner, M.A., a licensed psychologist, conducted a psychological evaluation of plaintiff on June 12, 2017, at the request of plaintiff's non-attorney representative. Plaintiff reported memory difficulties and that she became easily agitated. She told Ms. Burner that her doctor had not released her for work after the aneurysm because of memory problems. She also told Ms. Burner that she could not drive because she became confused and lost, that she could not engage in household tasks as she did before, and that she has isolated herself from friends. During the exam, however, plaintiff did not demonstrate any psychomotor agitation, and her speech was clear. Ms. Burner conducted IQ and memory tests. Plaintiff scored a full scale IQ of 84 and a

working memory index score of 83.  Although Ms. Burner reported that plaintiff's memory quotients fell within the low average range in all areas, she noted extremely low scores in some areas.  Based on those results, Ms. Burner opined plaintiff lacked many of the mental abilities and aptitudes needed to meet the competitive standards of work in many areas.

The ALJ held a hearing on July 31, 2017.  Plaintiff had given birth just three weeks before.  Plaintiff testified she was unable to work because she had difficulty being around others and because her memory was "really bad."  She testified she did not receive any treatment for her memory problems and that she did not see Dr. Calliston for two years because she did not have insurance.  She lived with her boyfriend and her three children and cared her for her newborn and other children by herself.  If she had to, she could drive and shop for groceries.  She did the dishes at home and still experienced daily headaches that were cured with Tylenol.

A vocational expert also testified at the hearing.

The Administrative Law Judge concluded on November 29, 2017 that plaintiff was not under a disability as defined in the Social Security Act. May 11, 2018, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

## II.     Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered

disabled, regardless of age, education, and work experience. 20 C.F.R. §§
404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of
the presumptively disabling impairments, the Commissioner assesses whether the
claimant retains the "residual functional capacity" ("RFC") to perform his or her past
relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv),
416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to
perform exertional tasks or, in other words, what the claimant can still do despite his or
her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003)
(internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While
an RFC must be based "on all relevant evidence, including the medical records,
observations of treating physicians and others, and an individual's own description of his
limitations," an RFC is nonetheless an "administrative assessment"—not a medical
assessment—and therefore "it is the responsibility of the ALJ, not a physician, to
determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus,
"there is no requirement that an RFC finding be supported by a specific medical
opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant
is responsible for *providing* evidence relating to his RFC and the Commissioner is
responsible for *developing* the claimant's "complete medical history, including arranging
for a consultative examination(s) if necessary, and making every reasonable effort to help
[the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R.
§§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the

claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III.     The ALJ's Decision

At Step One, the ALJ found plaintiff met the insured status requirements through the relevant period, and she had not engaged in substantial gainful activity since December 29, 2014. At Step Two, the ALJ found plaintiff suffers from the following severe impairments: "status post cerebral aneurysm with subarachnoid hemorrhage and coiling… neurocognitive disorder and …depression and anxiety." (Tr. 17.)

At Step Three, the ALJ concluded plaintiff does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations.

Next, in Step Four, the ALJ determined plaintiff's RFC. The ALJ found that plaintiff

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations. She can never climb ropes, ladders, or scaffolds; have no exposure to unprotected heights or hazardous machinery; is limited to simple, routine tasks with minimal changes in job setting and duties; have no contact with the general public and only occasional contact with coworkers and supervisors; and do no fast paced production work.

(Tr. 20). As part of this determination, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. However, the ALJ also found that his statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

Based on this RFC determination, however, the ALJ determined plaintiff cannot perform any past relevant work.

At Step Five, the ALJ analyzed whether plaintiff can successfully adjust to other work. The ALJ relied on vocational expert ("VE") testimony to determine whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and RFC. The VE testified that plaintiff would be able to perform the requirements of, for example, light exertional jobs such as housekeeper/cleaner, mail clerk, addresser, silver wrapper, and electrode cleaner. The ALJ then found these jobs exist in significant numbers in the national economy and concluded plaintiff is not disabled.

## IV.    Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## V.    Discussion

Plaintiff's two arguments in favor of reversal are that (1) the psychiatric review technique, or paragraph B criteria, is not analyzed correctly, and (2) the decision fails to comply with the *Polaski* factors because the agency decision is based on speculative surmise as to the practice of medicine.

## A.    Psychiatric review technique

Plaintiff argues that the psychiatric review technique ("PRT") is not analyzed correctly because it is based upon plaintiff's condition "prior to the brain insult brought about by aneurysm and the consequent injury." (#9 at 4.)  Although the ALJ discussed plaintiff's condition before the aneurysm, the ALJ specifically recognized that her education and work history was completed prior to the aneurysm.  However, the evidence is still relevant because it reflects plaintiff's life-long cognitive functioning.  Her IQ and memory scores, though low-average, do not indicate disabling conditions.  Further, plaintiff did not display memory deficits that would prevent her from performing the job delineated by the ALJ's RFC finding.   Although Ms. Burner found plaintiff faced marked limitations and could not meet competitive standards, the ALJ recognized that Burner's findings were based upon information provided by plaintiff inconsistent with the record and plaintiff's own testimony.  For example, plaintiff told Ms. Burner that her doctor had not released her to work and that she did not drive.  Both of those statements are refuted by the record.  Further, it was not error for the ALJ to note that Burner had not been a treating provider or that she had been privately hired for the purpose of the disability application.  *See Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007).  Plaintiff's characterization of the ALJ's analysis as a "smear" is not only false, but is itself a smear.  This Court admonishes plaintiff's counsel to refrain from this and other slanderous language that he has employed throughout his brief.

Plaintiff further states that it was error for the ALJ to find that plaintiff was cleared for return to work and that she failed to complain about memory impairment at medical

encounters with treating providers.    Again, these findings are supported by substantial evidence.  Plaintiff suggests that it was unreasonable for the ALJ to conclude plaintiff had been released to work because the ALJ herself concluded plaintiff was not able to return to her waitressing job.  Plaintiff also states that the "medical notation is ambiguous."  The Court disagrees.  The medical notation states plaintiff requested a letter to be released back to work and that such a letter was faxed.  That is not ambiguous.  Plaintiff's speculation as to what this could have meant (whether plaintiff was cleared to do any work versus her prior work) is an irrelevant exercise.  The ALJ did not determine plaintiff could return to work as a waitress or a bartender; in fact, the ALJ's RFC finding is quite limited and qualifies her for jobs far less demanding than plaintiff's former work.

Plaintiff suggests that the ALJ incorrectly concluded that plaintiff's allegations of memory and concentration difficulties did not have support in the record and that, as a result, she incorrectly concluded the difficulties did not constitute "marked" limitations.  Although plaintiff testified that she has memory and concentration problems, evidence in the medical record is thin.  Her neurosurgeon assessed her concentration and memory as "impaired" without further explanation.  No provider ever recommended treatment for any such impairment, and plaintiff apparently never sought any treatment.  Despite this, however, the ALJ did account for plaintiff's reported memory and concentration problems by including reference to them in her RFC finding.  The memory and concentration impairments were thus not ignored; rather the substantial evidence in the record as a whole supports the ALJ's finding.

**B. Speculation**

Next, plaintiff argues the ALJ did not comply with *Polaski* factors because she says the decision is based on "speculative surmise as to the practice of medicine, particularly with respect to memory impairment." The *Polaski* factors require that the ALJ give full consideration to the claimant's subjective complaints, even where the objective medical evidence does not fully support them. *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). The evidence to be considered include the claimant's prior work record and observations by third parties and treating and examining physicians relating to, e.g., the claimant's daily activities; the duration, frequency and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions. *Id.*

Plaintiff argues that the ALJ's decision instead "engages in speculative surmise as to what the practice of medicine would require, or what a claimant like Ms. Maddalone reasonably would do, given certain circumstances." (#9 at 11.) Plaintiff includes as examples of the ALJ's speculation: (1) that Dr. Callison did not recommend treatment for memory impairment, (2) that plaintiff's requesting a tubal ligation shows she was capable of making logical choices, (3) that the obstetrician would not have performed a tubal ligation and might have consulted a social worker if the doctor had concerns about plaintiff's capacity, (4) that plaintiff's IQ and memory scores were not commonly disabling, and (5) that plaintiff would not have been cleared to work or be able to drive or take care of young children if she were truly disabled. Plaintiff also criticizes the ALJ for typographical and other non-substantive errors.

Neither the typographical errors nor the ALJ's various observations constitute reversible error. The ALJ did not rely only on those observations, some of which are surely permissible regardless. For example, it is true that an IQ of 84 is not per se disabling. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05. Reviewing the record as a whole, substantial evidence exists to support the ALJ's decision. The ALJ determined that the plaintiff had a brain injury and that she had some mental impairments as a result. The ALJ limited plaintiff to simple, routine tasks with minimal changes in job setting and duties, no contacts with the general public, only occasional contact with coworkers and supervisors, and no fast-paced production work. The ALJ gave ample reasons to discount Ms. Burner's opinion, including that it appeared based on the inaccurate statements that plaintiff made to Burner. For example, plaintiff told Burner she could not drive or adequately care for her children and that she was isolated from her friends. However, she testified a month later at the hearing that friends come over, that she has a car, and she could drive if she needed to. She cares for her newborn and two older children at home. Her application form states she prepares food daily and she drives to see her parents or close friends, and the form and treatment records show she needs no help with activities of daily living. Finally, plaintiff never sought treatment for her memory deficits. Such a consideration is proper, as a claimant's "failure to seek medical assistance for her alleged ... impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits." *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); *see also Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (citing *id.*).

The Court defers to the ALJ's determination, which is supported by substantial evidence.

## VI.    Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint (#1) is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 27th day of March, 2020.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE